UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LOUISE SETELIUS,

                Plaintiff,

      v.

NATIONAL GRID ELECTRIC SERVICES, LLC, and
HANK DELACH, in his official and individual capacities,

                Defendants.

Civil Action No. 11-CV-5528
(MKB)(ETB)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
 National Grid Electric Services LLC
and Mr. Henry Delach
1399 Franklin Avenue
Suite 200
Garden City, NY 11530-1679
Telephone:  (516) 267-6300
Facsimile:  (516) 267-6301

Of Counsel:
    Robert A. LaBerge, Esq.
    Jessica C. Satriano, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

STANDARD FOR SUMMARY JUDGMENT .................................................................. 5

ARGUMENT ....................................................................................................................... 5

    POINT I ...................................................................................................................... 5

    THERE ARE NO ISSUES OF MATERIAL FACT CONCERNING
    MS. SETELIUS' CLAIMS OF GENDER DISCRIMINATION AND/OR
    RETALIATION ........................................................................................................... 5

        A.    Analytical Framework ................................................................................ 5

        B.    Ms. Setelius Cannot Establish a *Prima Facie* Case of Gender
            Discrimination ............................................................................................ 6

        C.    Ms. Setelius Cannot Establish a *Prima Facie* Case of Retaliation ........... 12

        D.    The Company Proffered a Legitimate, Non-Discriminatory Reason
            for Terminating Ms. Setelius' Employment ............................................... 13

        E.    Ms. Setelius Cannot Demonstrate Pretext ................................................. 14

    POINT II ..................................................................................................................... 15

    SUMMARY JUDGMENT IS WARRANTED AS TO MS. SETELIUS'
    GENDER-BASED HOSTILE WORK ENVIRONMENT CLAIM .................................. 15

        A.    Ms. Setelius Does Not Allege Conduct Sufficient to Create a
            Gender-Based Hostile Work Environment .................................................. 15

        B.    National Grid is Not Liable for the Alleged Gender-Based Hostile
            Work Environment ...................................................................................... 18

    POINT III .................................................................................................................... 20

    MS. SETELIUS' COMPENSATION CLAIM LACKS LEGAL AND FACTUAL
    MERIT AND MUST ALSO BE DISMISSED ................................................................. 20

i

POINT IV ..................................................................................................................24

MS. SETELIUS' AIDING AND ABETTING CLAIMS AGAINST MR. DELACH MUST BE DISMISSED AS A MATTER OF LAW .......................................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Abreu Suzuki v. State Univ. of N.Y. College,*
   2013 U.S. Dist. LEXIS 83555 (E.D.N.Y. June 13, 2013) ......................................21

*Alfanso v. Costello,*
   294 F.3d 365 (2d Cir. 2002)..........................................................................15, 16, 17

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).........................................................................................................5

*Augustin v. Yale Club,*
   2006 U.S. Dist. LEXIS 67462 (S.D.N.Y. Sept. 15, 2006), *aff'd,* 274 Fed. Appx. 76
   (2d. Cir. 2008)................................................................................................................18

*Ballance v. Energy Transp. Corp.,*
   2001 U.S. Dist. LEXIS 16763 (S.D.N.Y. Oct. 18, 2001) ......................................18

*Belfi v. Prendergast,*
   191 F.3d 129 (2d Cir. 1999)........................................................................................22

*Bennett v. Watson Wyatt & Co.,*
   136 F. Supp. 2d 236 (S.D.N.Y. 2001)..........................................................................9

*Burlington Indus., Inc. v. Ellerth,*
   524 U.S. 742 (1998)......................................................................................................18

*Cajamarca v. Regal Entertainment Group,*
   863 F. Supp. 2d 237 (E.D.N.Y. 2012) ......................................................................19

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)........................................................................................................5

*Clark County Sch. Dist. v. Breeden,*
   532 U.S. 268 (2001)......................................................................................................17

*Clarke v. Mount Sinai Hosp.,*
   2007 U.S. Dist. LEXIS 101036 (E.D.N.Y. June 28, 2007) ...................................19

*Clarke v. Mount Sinai Hosp.,*
   2007 U.S. Dist. LEXIS 52274 (E.D.N.Y., July 13, 2007).....................................19

*Dillon v. Morano,*
   497 F.3d 247 (2d Cir. 2007).........................................................................................9

*Dinkins v. Suffolk Transp. Serv.*,
    2010 U.S. Dist. LEXIS 71242 (E.D.N.Y. July 15, 2010) .......................................15

*Dinolfo v. Rochester Tel. Corp.*,
    972 F. Supp. 718 (W.D.N.Y. 1997) .......................................24

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) .......................................18

*Ferraro v. Kellwood Co.*,
    440 F.3d 96 (2d Cir. 2006).......................................18, 19

*Figueroa v. City of New York*,
    118 Fed. Appx. 524 (2d Cir. 2004) .......................................17

*Finnerty v. Sadlier, Inc.*,
    176 Fed. Appx. 158(2nd Cir. 2006) .......................................18

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. N.Y. 2000) .......................................10

*Gordon v. NYC Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000).......................................12

*Hanna v. New York Hotel Trades Council & Hotel Assn. of NY City Health Ctr., Inc.*,
    18 Misc. 3d 436 (N.Y. Sup. Ct. 2007) .......................................18

*Harker v. Utica Coll. of Syracuse Univ.*,
    885 F. Supp. 378 (N.D.N.Y. 1995).......................................22, 23

*Harris v. Forklift Systems, Inc.*,
    510 U.S. 17 (1993).......................................16

*Horton v. Corning, Inc.*,
    1996 U.S. App. LEXIS 5659 (2d Cir. Mar. 27, 1996).......................................5

*Inman v. City of New York*,
    2011 U.S. Dist. LEXIS 104232 (S.D.N.Y. Sept. 13, 2011).......................................13

*Joseph v. Leavitt*,
    465 F.3d 87 (2d Cir. 2006).......................................8

*Kanhoye v. Altana, Inc.*,
    686 F. Supp. 2d 199 (S.D.N.Y. 2009).......................................24

*Kaplan v. Multimedia Entm't, Inc.*,
    2005 U.S. Dist. LEXIS 40351 (W.D.N.Y. 2005), *aff'd*, 199 Fed. Appx. 54 (2d Cir.
    2006) .......................................24

*Krinsky v. Abrams,*
    2007 U.S. Dist. LEXIS 38376 (E.D.N.Y. May 25, 2007) ..................................... 10

*Leopold v.Baccarat, Inc.,*
    174 F.3d 261 (2d Cir. 1999) ............................................................................. 5

*Mack v. Otis Elevator Co.,*
    326 F.3d 116 (2d Cir. 2003) ........................................................................... 19

*Mark v. Brookdale Univ. Hosp. & Med. Ctr.,*
    2005 U.S. Dist. LEXIS 12584 (E.D.N.Y. June 22, 2005) ..................................... 18

*Mathirampuzha v. Potter,*
    548 F.3d 70 (2d Cir. 2008) ............................................................................... 5

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ........................................................................................ 5

*Meritor Savings Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) .......................................................................................... 15

*Miller v. Batesville Casket Co.,*
    2007 U.S. Dist. LEXIS 53068 (E.D.N.Y. 2007), *aff'd*, 312 Fed. Appx. 404 (2d Cir.
    2009) ............................................................................................................ 23

*Milligan v. Citibank, N.A.,*
    2001 U.S. Dist. LEXIS 16105 (S.D.N.Y. 2001) ........................................... 22, 24

*Missick v. City of New York,*
    707 F. Supp. 2d 336 (E.D.N.Y. 2010) ........................................................... 11

*Morales v. ATP Health & Beauty Care, Inc.,*
    2008 U.S. Dist. LEXIS 63540 (D. Conn. Aug. 18, 2008) ..................................... 16

*Nally v. NYS*
    2013 U.S. Dist. LEXIS 75722 (N.D.N.Y. May 30, 2013) ..................................... 19

*Nunez v. Cuomo,*
    2012 U.S. Dist. LEXIS 110867 (E.D.N.Y. Aug. 7, 2012) ..................................... 25

*Parinello v. Bausch & Lomb,*
    2013 U.S. Dist. LEXIS 55379 (W.D.N.Y. Apr. 17, 2013) ..................................... 9

*Patterson v. Xerox Corp.,*
    2012 U.S. Dist. LEXIS 82052 (W.D.N.Y. June 13, 2012) ..................................... 18

*Pergament v. Fed. Express Corp.,*
    2007 U.S. Dist. LEXIS 23732 (E.D.N.Y. 2007) ................................................. 21

*Quinn v. Green Tree Credit Corp.,*
  159 F.3d 759 (2d Cir. 1998) .................................................................17

*Renaud v. Fed. Express Corp.,*
  2012 U.S. Dist. LEXIS 1452 (E.D.N.Y. Jan. 6, 2012) ..........................14

*Richards v. New York City Dep't of Homeless Servs.,*
  2009 U.S. Dist. LEXIS 20410 (E.D.N.Y. Mar. 15, 2009) .....................19

*Rios v. Buffalo & Fort Erie Pub. Bridge Auth.,*
  2008 U.S. Dist. LEXIS 17911 (W.D.N.Y. 2008) ...................................15

*Robinson v. Purcell Constr. Corp.,*
  859 F. Supp. 2d 245 (N.D.N.Y. 2012) ..................................................18

*Robles v. Cox & Co.,*
  841 F. Supp. 2d 615 (E.D.N.Y. 2012) ....................................................8

*Rommage v. MTA Long Island Rail Rd.,*
  2010 U.S. Dist. LEXIS 104882 (E.D.N.Y. Sept. 30, 2010)...................13

*Rosen v. Feldman,*
  1996 U.S. App. LEXIS 4516 (2d Cir. Mar. 14, 1996)............................5

*Sarmiento v. Queens College,*
  386 F. Supp. 2d 93 (E.D.N.Y. 2005) ......................................................9

*Schiano v. Quality Payroll Systems, Inc.,*
  445 F.3d 597 (2d Cir. 2006)...................................................................5

*Schwapp v. Town of Avon,*
  118 F.3d 106 (2d Cir. 1997)..................................................................16

*Shumway v. UPS,*
  118 F.3d 60 (2d Cir. 1997)................................................................6, 14

*Simpri v. City of New York,*
  2003 U.S. Dist. LEXIS 23266 (S.D.N.Y. 2003)................................20, 21

*Slattery v. Swiss Reinsurance America Corp.,*
  248 F.3d 87 (2d Cir. 2001).....................................................................6

*Smalls v. Allstate Ins. Co.,*
  396 F. Supp. 2d 364 (S.D.N.Y. 2005).....................................................11

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar,*
  133 S. Ct. 2517 (2013)...........................................................................6

*Valenti v. Massapequa Union Free Sch. Dist.,*
　　2012 U.S. Dist. LEXIS 43279 (E.D.N.Y. Mar. 28, 2012) ...................................................10

*Victory v. Hewlett-Packard Co.,*
　　34 F. Supp. 2d 809 (E.D.N.Y. 1999) ...................................................24

*Virola v. XO Communs., Inc.,*
　　2008 U.S. Dist. LEXIS 30413 (E.D.N.Y. Apr. 15, 2008) ...................................................25

*Wallace v. New York State Dep't of Corr. Servs.,*
　　2006 U.S. Dist. LEXIS 51863 (W.D.N.Y. July 28, 2006) ...................................................9

*Ward v. Empire Vision Ctrs., Inc.,*
　　686 F. Supp. 2d 243 (W.D.N.Y. Feb. 18, 2010) ...................................................10

*Woods v. Enlarged City Sch. Dist.,*
　　473 F. Supp. 2d 498 (S.D.N.Y. 2007) ...................................................9

**STATUTES**

29 U.S.C. § 206(d) ...................................................1

29 U.S.C. § 206(d)(1) ...................................................22

29 U.S.C. § 255(a) ...................................................20

42 U.S.C. § 2000e-3(a) ...................................................12

42 U.S.C. § 2000e, *et seq.* ...................................................1

## PRELIMINARY STATEMENT

In this action, Plaintiff Louise Setelius ("Plaintiff" or "Ms. Setelius") asserts claims for gender discrimination, workplace harassment, and retaliation against her former employer, defendant National Grid Electric Services, LLC ("National Grid" or the "Company"), and one of her former supervisors, defendant Henry Delach ("Mr. Delach"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA"); and the New York Human Rights Law, N.Y. Executive Law § 296 ("NYHRL").

The Company terminated Plaintiff's employment in February 2011 for improper use of a National Grid contractor to install an underground electrical service at her personal residence. Plaintiff attempts to assert gender discrimination and retaliation claims based upon her discharge. These claims, however, must fail because it is undisputed that (a) the Company's Standards of Conduct expressly forbid employees from using services of any contractor of the Company for private purposes; and (b) Plaintiff admitted to using a Company contractor to install the underground electrical service at her home.

Plaintiff also attempts to assert a hostile work environment claim based upon the alleged conduct of Mr. Delach. This claim, however, is not actionable because the undisputed record evidence confirms that: (a) none of Mr. Delach's alleged conduct was gender-based; (b) Mr. Delach's alleged conduct was not sufficiently severe or pervasive so as to rise to the level of actionable workplace harassment and occurred, if at all, largely outside the applicable limitations period; and (c) Plaintiff failed to complain about any of Mr. Delach's alleged conduct, even though the Company had an adequate complaint procedures in place.

Plaintiff's EPA claims based upon her allegations that she was compensated at a lower salary than three of her former male co-workers, must be dismissed as well. These claims are

partially untimely. Furthermore, the undisputed record evidence confirms that any difference in salary with respect to male comparators was attributable to non-gender based factors such as their educational background, prior work experience, and salary earned immediately prior to commencing employment with the Company.

Finally, Plaintiff's attempts to pursue an NYHRL claim against Mr. Delach under the "aider and abettor" theory of liability. However, since Plaintiff does not allege that any other individual besides Mr. Delach participated in the alleged discriminatory conduct, her claim against Mr. Delach must be dismissed as a matter of law. In addition, it is undisputed that Mr. Delach was not involved in the investigation of Plaintiff's improper use of a National Grid contractor or in the decision to discharge her for this admitted violation of the Company's Standards of Conduct.

For these reasons, as well as for the additional reasons set forth below, Defendants move pursuant to Fed. R. Civ. Pro. 56 for summary judgment. They respectfully request that this Court grant their motion and issue an order dismissing Plaintiff's complaint in its entirety.

## FACTUAL BACKGROUND

Ms. Setelius began her employment with Long Island Lighting Company, a predecessor to National Grid, in March 1986 as a clerk in a tree trim department. (Pl. Dep. 14). She was subsequently promoted to a Work Coordinator position in October 2001 and to a Field Supervisor position in September 2004. (Pl. Dep. 15; 18-19). As a Field Supervisor, Ms. Setelius was supervised by the following Area Supervisors: Mr. Mike Abrams from September 2004 to November 2008; Mr. Hank Delach from November 2008 to January 2011; and Mr. Chris Julich from January 2011 until her termination in February 2011. (Pl. Dep. 20).

As a public utility, National Grid provides an important service to the general public and holds a significant position requiring public trust and accountability. (Dorsey Aff. ¶6). The

2

Company maintains a uniform set of standards of ethical business conduct, entitled "Our Standards of Ethical Business Conduct" (referred to herein as the "Standards of Conduct"). *Id.* at ¶7. The Standards of Conduct specifically advise employees that they "must not, for private purposes, purchase goods or use the services of any contractor or supplier retained by National Grid." *Id.* at ¶8.

The Company distributed the Standards of Conduct to its employees, including Ms. Setelius, in the Fall of 2007. *Id.* Ms. Setelius was subsequently trained with respect to the Standards of Conduct on several occasions. (Pl. Dep. 32-34; Dorsey Aff. ¶7). In January 2009 and February 2010, Ms. Setelius signed written acknowledgements confirming that she had received the Standards of Conduct, and had read and understood them. (Pl. Dep. 32-34).

In the Summer 2009, the Company received an anonymous complaint that Ms. Setelius used a National Grid contractor to install an underground electrical service at her personal residence, without paying for it. (Dorsey Aff. ¶10). As a result of this complaint, and pursuant to standard National Grid procedures, the Company's Ethics and Compliance Office conducted an investigation into this matter. *Id.*

Mr. Christopher Dorsey (Lead Analyst, Ethics and Compliance Office) and Mr. Kevin McConnell (Lead Program Manager, Human Resources Department) met with Ms. Setelius, in June 2010, regarding whether she had used a Company contractor to install an underground electrical service at her residence. (Dorsey Aff. ¶11). Ms. Setelius admitted that she did in fact do so. (Pl. Dep. 38-41). Ms. Setelius further admitted that she never paid for the installation of the underground electrical service at her personal residence, and never made any inquiries

regarding the bill.[1]  *Id.*  Ms. Setelius claimed that Mr. Albert Carlon ("Mr. Carlon"), a co-worker, arranged for the installation of the service at her home.  (Dorsey Aff. ¶13).

In August 2010, Messrs. Dorsey and McConnell had a follow-up meeting with Ms. Setelius.  *Id.* at ¶14.  They advised Ms. Setelius that they interviewed Mr. Carlon and that he denied arranging for the services to be performed by a contractor at her home.  *Id.*  In response, Ms. Setelius claimed that other Company employees had underground electrical service installed at their homes.  *Id.*  When Messrs. Dorsey and McConnell requested the names of these employees, Ms. Setelius refused to provide them.  *Id.*  Nevertheless, Messrs. Dorsey and McConnell proceeded to investigate Ms. Setelius' allegations by engaging in spot checks of other management employees who were peers of Ms. Setelius.  *Id.* at ¶15.  The spot checks uncovered no evidence to substantiate Ms. Setelius' allegations.  *Id.*

Based on the evidence gathered throughout the investigation process, Messrs. Dorsey and McConnell concluded that Ms. Setelius violated the Company's Standards of Conduct by using a Company contractor to install an underground electric service at her home without paying for the installation. Messrs. Dorsey and McConnell subsequently advised Mr. Thomas Beisner (Director of Electric Service) and Mr. Richard Romano (who at the time worked in the Company's Human Resources) of their conclusion.  (Dorsey Aff. ¶16; Beisner Aff. ¶5).

Mr. Beisner, in consultation with Mr. Romano, determined that Ms. Setelius' conduct constituted a serious violation of the Company's Standards of Conduct, warranting termination of her employment.  (Beisner Aff. ¶¶6, 9).  Accordingly, Ms. Setelius' employment with National Grid was terminated effective February 10, 2011.  *Id.* at ¶7.

---

[1] National Grid customers would generally be billed approximately $2,000 or more to have this type of work performed at their homes. (Dorsey Aff. ¶12).

## STANDARD FOR SUMMARY JUDGMENT

A summary judgment motion should be granted when "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes over irrelevant facts may not obscure the absence of a material dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Following these principles, the Second Circuit has repeatedly reaffirmed its mandate that summary judgment motions be granted in employment discrimination cases where plaintiffs fail to present specific facts showing genuine issues for trial.  *See, e.g., Horton v. Corning, Inc.*, 1996 U.S. App. LEXIS 5659, at *6 (2d Cir. Mar. 27, 1996); *Rosen v. Feldman*, 1996 U.S. App. LEXIS 4516, at *7 (2d Cir. Mar. 14, 1996).

## ARGUMENT

### POINT I
### THERE ARE NO ISSUES OF MATERIAL FACT CONCERNING MS. SETELIUS' CLAIMS OF GENDER DISCRIMINATION AND/OR RETALIATION

**A.   *Analytical Framework***

Title VII and NYHRL gender discrimination and retaliation claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008).[2]  Under *McDonnell Douglas*, Ms. Setelius has the initial burden of establishing a *prima facie* case of gender discrimination/retaliation.  *Id.*  If Ms. Setelius establishes a *prima facie* case, the burden shifts to the Company to articulate some legitimate, nondiscriminatory reason for its actions.  *Id.*  If the Company provides such a reason, Ms. Setelius must then show that the Company's proffered

---

[2] The courts analyze plaintiffs' NYHRL claims under the same rubric used to analyze plaintiffs' analogous federal law claims for discrimination and retaliation.  *See, e.g., Leopold v.Baccarat, Inc.*, 174 F.3d 261, 264, n.1 (2d Cir. 1999); *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).  Accordingly, Defendants will address Plaintiff's Title VII and NYHRL claims together.

reason is pretextual by demonstrating that (1) the proffered reason is false; *and* (2) the real reason was unlawful discrimination/retaliation.[3]  *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

**B.    Ms. Setelius Cannot Establish a Prima Facie Case of Gender Discrimination**

To establish a *prima facie* case of gender discrimination, an employee must prove that: (1) she is a member of a protected class; (2) she was qualified for the position that she sought or held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *See Shumway v. UPS,* 118 F.3d 60, 63 (2d Cir. 1997).  The record evidence in this case confirms that Ms. Setelius cannot establish even a *prima facie* case of gender discrimination.  First, she cannot show that her termination occurred under circumstances sufficient to give rise to an inference of discrimination.  Second, many of the employment actions she complains about are not sufficiently adverse to establish viable Title VII and/or NYHRL discrimination claims.

**1.    As Ms. Setelius Was Terminated Solely for Violating the Company's Standards of Conduct, She Cannot Demonstrate That Her Termination Occurred Under Circumstances Sufficient to Give Rise to an Inference of Discrimination**

As noted above, the Company maintains Standards of Conducts, which require all employees to observe "the highest standards of business conduct[,]" to avoid situations that create "even the appearance of impropriety[,]" and to "use their position, [and the] opportunities discovered through their position, and company resources only for company purposes and not for personal gain."  (Dorsey Aff. ¶8).  Most importantly, the Standards of Conduct specifically advise employees that they "must not, for private purposes, purchase goods or use the services of

---

[3] Prior to the Supreme Court's decision in *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), Ms. Setelius could have prevailed on her Title VII retaliation claim if evidence in the record could permit a jury to find that her dismissal by the Company was motivated at least in part by retaliation.  After *Nassar*, however, in order to prevail on her Title VII retaliation claim, Ms. Setelius must demonstrate that retaliation was not just a motivating factor behind the adverse action, but was rather the "but-for" cause of it. *See id.* at 2533.

any contractor or supplier retained by National Grid." *Id.* At her deposition in this matter, Ms. Setelius admitted that:

- During her employment with the Company, she received a copy of the Standards of Conduct several times and signed written acknowledgements indicating that she had read and understood them. (Pl. Dep. 32-34).
- She was trained on the Standards of Conduct numerous times. (Pl. Dep. 32-34).
- She was fully familiar with the rule prohibiting employees from using services of National Grid's contractors for personal purposes. (Pl. Dep. 34-36).
- She understood that violation of the Standards of Conduct could result in termination of employment. (Pl. Dep. 35).

The Company received an anonymous complaint that Ms. Setelius used a National Grid contractor to install an underground electrical service at her personal residence. (Dorsey Aff. ¶10). During the course of the Company's investigation into this complaint, Ms. Setelius admitted that she did in fact have an underground electrical service installed at her personal residence without paying for it. *Id.* at ¶11. Similarly, at her deposition Ms. Setelius admitted that:

- She had had an underground electrical service installed at her personal residence. (Pl. Dep. 38).
- The installation of the underground electrical service was performed by a National Grid contractor. (Pl. Dep. 39).
- She never paid for the installation of the underground electrical service at her personal residence, and never made any inquiries regarding a bill. (Pl. Dep. 39-41).

National Grid terminated Ms. Setelius' employment because it reasonably believed that she had violated the Company's Standards of Conduct. (Beisner Aff. ¶¶6, 9). In light of the record evidence cited above, Ms. Setelius cannot demonstrate that her employment was terminated under circumstances sufficient to give rise to an inference of discrimination. Accordingly, Ms. Setelius' gender discrimination claims must be dismissed for failure to establish a *prima facie* case.

7

### 2.    The Remaining Actions Complained About by Ms. Setelius Do Not Constitute Adverse Employment Actions as a Matter of Law[4]

Ms. Setelius seems to suggest in her complaint that the following employment actions are sufficiently adverse to support her gender discrimination claim: (1) the alleged ostracizing of Ms. Setelius by her co-workers and Mr. Delach; (2) Mr. Delach's alleged exclusion of Ms. Setelius from certain meetings and communications; (3) Mr. Delach's alleged denial of Ms. Setelius' request to attend a Women's Conference in Boston; (4) Mr. Delach's alleged criticism of Ms. Setelius for taking time off to attend doctors' appointments; and (5) the alleged denial of Ms. Setelius' request to transfer to a Work Coordinator position in February 2009.  As an initial matter, with the exception of denying Ms. Setelius' request to attend the conference in Boston, Mr. Delach vehemently denies engaging into any of the conduct Ms. Setelius now attributes to him.  (Delach Aff. ¶¶5-13).  Most importantly, however, none of the above enumerated actions constitutes an adverse employment action under applicable law.

A plaintiff sustains an adverse employment action if he/she endures a materially adverse change in the terms and conditions of his/her employment.  *See Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).  To be adverse, an employment action must be one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id*.  Materially adverse changes include a termination of employment, a demotion, receiving a less distinguished-title, a material loss of benefits, or significantly diminished material responsibilities.  *Id*.

---

[4] Many of Ms. Setelius' allegations purporting to state gender discrimination, sexual harassment, and retaliation claims under Title VII and/or NYHRL are time-barred.  Pursuant to Title VII, a charge of discrimination must be filed with the EEOC within 180 days of any alleged unlawful employment practice, or within 300 days where there is a state or local agency with authority to grant or seek relief from such practice.  *See Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012).  Plaintiff filed her EEOC charge on April 27, 2011.  Thus, only events occurring 300 days before April 27, 2011 – *i.e.*, prior to June 30, 2010 – can be subject of this lawsuit.  Ms. Setelius' Complaint, however, references numerous events that occurred before June 30, 2010.  (Compl. ¶10, ¶12 (Pl. Dep. 51-52), Compl. ¶22-¶30, ¶31 (Pl. Dep. 113-115, 119).  Any claims based on these events are therefore time-barred.

a.   *The Alleged Ostracizing By Co-Workers and Mr. Delach*

Although Ms. Setelius alleges that she was ostracized by her co-workers and that her co-workers did not want to interact with her (Compl. ¶11), it is well-established that ostracism and isolation at work are not enough to constitute an adverse employment actions   *See, e.g., Parinello v. Bausch & Lomb,* 2013 U.S. Dist. LEXIS 55379, at \*26 (W.D.N.Y. Apr. 17, 2013); *Wallace v. New York State Dep't of Corr. Servs.,* 2006 U.S. Dist. LEXIS 51863, at \*27 (W.D.N.Y. July 28, 2006) (collecting cases).   The case law also makes clear that personal dislike of a plaintiff by supervisors or co-workers, for any reason other than the plaintiff's membership in a protected category, is legally insufficient to support a *prima facie* case of gender discrimination.   *See, e.g., Woods v. Enlarged City Sch. Dist.,* 473 F. Supp. 2d 498, 522-23 (S.D.N.Y. 2007); *Sarmiento v. Queens College*, 386 F. Supp. 2d 93, 115-116 (E.D.N.Y. 2005).

b.   *The Alleged Exclusion from Meetings and Alleged Assignment of Clerical Duties*

Ms. Setelius also claims that Mr. Delach "regularly excluded Ms. Setelius from informal meetings and formal meetings with safety supervisors" and "left Ms. Setelius off important work related communications."   (Compl. ¶¶18-19).   Again, however, being left out of meetings and work-related communications does not amount to adverse employment action, absent a showing that some additional negative consequences flowed from that exclusion. *Dillon v. Morano*, 497 F.3d 247, 255 (2d Cir. 2007); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001).   Here the record contains no evidence suggesting that the alleged exclusion from certain meetings or allegedly being left off of certain communications impinged upon Ms. Setelius' professional advancement or represented a significant change in her prior responsibilities.

The same is true with respect to Ms. Setelius' claim that during safety meetings, which occurred only once a month, Mr. Delach allegedly demanded that Ms. Setelius perform "tasks

9

typically performed by clerical or administrative personnel." (Compl. ¶15). Again, even if these allegations were true, they would be insufficient to establish an adverse employment action. *See Valenti v. Massapequa Union Free Sch. Dist.*, 2012 U.S. Dist. LEXIS 43279, at *31 (E.D.N.Y. Mar. 28, 2012); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. N.Y. 2000) (holding that to be an adverse employment action, the assignment must "constitute a setback to the plaintiff's career"). "[S]ubjective dissatisfaction with assignments does not constitute adverse employment action." *Valenti*, 2012 U.S. Dist. LEXIS 43279, at *43. Here, Ms. Setelius cannot point to any "materially adverse" change to her career, position, salary, benefits, or overall position as a result of being allegedly asked to occasionally perform the above-mentioned tasks.

### c. *Alleged Denial of Opportunity to Attend Massachusetts Women's Conference in Boston*

Ms. Setelius also alleges that in December 2010 she requested permission from Mr. Delach to attend the Massachusetts Women's Conference in Boston, which Mr. Delach denied. (Compl. ¶37). During her deposition, Ms. Setelius testified that Mr. Delach told her that he could not authorize her attendance because of newly-implemented budgetary cuts. (Pl. Dep. 92). The record contains no evidence to suggest that the reason provided by Mr. Delach is untrue.

During her deposition, Ms. Setelius admitted that attendance at the conference in question was not mandatory. (Pl. Dep. 91). Ms. Setelius has not provided (and cannot provide) any evidence to suggest that the attendance at the conference was required for her position or was a prerequisite for promotion. Accordingly, she cannot predicate her gender discrimination claim on these allegations. *See Ward v. Empire Vision Ctrs., Inc.*, 686 F. Supp. 2d 243, 249-250 (W.D.N.Y. Feb. 18, 2010); *Krinsky v. Abrams*, 2007 U.S. Dist. LEXIS 38376, at *8, *23

(E.D.N.Y. May 25, 2007) (denial of request to attend three-day conference did not rise above level of mere inconvenience).

### d. Mr. Delach's Alleged Criticism of Ms. Setelius for Taking Time off to Attend Doctors' Appointments

Ms. Setelius also alleges that as a result of her medical condition she had to attend medical appointments once every three to four months. She further alleges that "[w]hen Ms. Setelius would leave work for these appointments, Mr. Delach routinely complained about her need to leave work and criticized her for these absences." (Compl. ¶21). Ms. Setelius does not allege that she was denied permission to attend her appointments, only that she was allegedly criticized for attending them. Ms. Setelius' allegations, even if true (which they are not), are insufficient to establish that she suffered an adverse employment action. It is well-established that being subject to criticism by a supervisor, without more, does not constitute adverse employment action under Title VII. *See Missick v. City of New York*, 707 F. Supp. 2d 336, 357 n.5 (E.D.N.Y. 2010) (collecting cases); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005).

### e. The Alleged Denial of Ms. Setelius' Request to Transfer to a Work Coordinator Position

Finally, Ms. Setelius alleges that in February/March of 2009 she applied, but was not selected, for a Work Coordinator position at the Company's Hicksville, New York facility. (Compl. ¶¶24, 29). First, any claims based on the alleged non-selection for a Work Coordinator position in 2009 are clearly time barred.[5]  Second, while the Company did post a Work Coordinator vacancy in 2009, due to re-staffing issues in the Overhead Line Department, the vacancy was closed. (Baer Aff. ¶18). Including Ms. Setelius, there were 17 applicants for the

---

[5] See supra page 8, fn. 4.

position, the majority of which were male. *Id.* The Work Coordinator position was not filled by any of the applicants for that position. *Id.*

Since none of the above-mentioned actions constitutes an adverse employment action under applicable law, Ms. Setelius' gender discrimination claims predicated on these actions fail as a matter of law.

**C.     *Ms. Setelius Cannot Establish a Prima Facie Case of Retaliation***

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000).

Ms. Setelius cannot establish a *prima facie* retaliation claim because she did not engage in any protected activity. An employee engages in a protected activity when she "has opposed any particular practice made an unlawful employment practice by this subchapter, or because [she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." *42 U.S.C. § 2000e-3(a).*

Here, Ms. Setelius cannot establish that she engaged in any protected activity. It is undisputed that prior to the time that she filed her complaint with the EEOC and the NYSDHR (which occurred after termination of her employment), she had never filed - or even threatened to file - any internal or external complaints of any nature. (Pl. Dep. 59-60; 64-66). During her deposition, Ms. Setelius admitted that:

- She was fully aware of and trained on the Company's policies prohibiting retaliation, discrimination, and harassment of any kind. (Pl. Dep. 64-66).
- She knew and understood the Company's procedure for filing internal complaints. (Pl. Dep. 64-66).
- She never made a complaint of any kind to National Grid's HR Department or ethics hotline. (Pl. Dep. 59-60; 64-66).

- She never requested Mr. Delach to stop his allegedly discriminatory/ harassing conduct. (Pl. Dep. 117).

Ms. Setelius also admitted that she had a "good relationship" with Mr. Thomas Smith (who at the time served as Mr. Delach's immediate supervisor), yet she never complained to Mr. Smith regarding Mr. Delach's alleged mistreatment of her. (Pl. Dep. 48). Given the absence of any allegedly protected activity, Ms. Setelius' retaliation claim is subject to dismissal as a matter of law. *See Inman v. City of New York*, 2011 U.S. Dist. LEXIS 104232, at *20-21 (S.D.N.Y. Sept. 13, 2011); *Rommage v. MTA Long Island Rail Rd.*, 2010 U.S. Dist. LEXIS 104882, at *13, *41-45 (E.D.N.Y. Sept. 30, 2010). Ms. Setelius' retaliation claims are further undermined by the following record evidence:

- At the time of Ms. Setelius' termination, Mr. Delach no longer served as her supervisor. (Pl. Dep. 20).
- Mr. Delach did not participate in the investigation into Ms. Setelius' misconduct and played no role in her termination. (Dorsey Aff. ¶18; Delach Aff. ¶¶14-15).
- Messrs. Dorsey and McConnell, the individuals who conducted the Company's investigation into Ms. Setelius' misconduct, were not aware of any alleged issues between Ms. Setelius and Mr. Delach, or of any complaints of gender discrimination, harassment, or retaliation by Ms. Setelius (as there were none). (Dorsey Aff. ¶23).
- Mr. Beisner, the decision maker with respect to Ms. Setelius' termination, likewise was not aware of any alleged issues between Ms. Setelius and Mr. Delach or of any complaints of gender discrimination, harassment, or retaliation by Ms. Setelius (as there were none). (Beisner Aff. ¶10).

Accordingly, Ms. Setelius cannot establish even a *prima facie* case of retaliation.

**D.      The Company Proffered a Legitimate, Non-Discriminatory Reason for Terminating Ms. Setelius' Employment**

Regardless of the legal theory asserted by Ms. Setelius (*i.e.*, disparate treatment, hostile work environment, retaliation), all of her claims fail on the independent, dispositive ground that National Grid had a legitimate non-discriminatory reason for terminating her employment – *i.e.*, Ms. Setelius' blatant violation of the Company's Standards of Conduct. The record evidence in

13

this case shows that: (1) Ms. Setelius was fully familiar with the Standards of Conduct prohibiting use of National Grid contractors for private purposes (Pl. Dep. 32-35); (2) she knew that violation of the Standards of Conduct could result in termination of her employment (Pl. Dep. 35); (3) she violated the Standards of Conduct by using a National Grid contractor to install an underground electrical service at her personal residence (Pl. Dep. 38-41); and (4) she was terminated for the same (Beisner Aff. ¶¶6, 9).  It is well-settled that the admitted violation of an employer's policy constitutes a legitimate, non-discriminatory reason for an employer to discharge an employee.  *See, e.g., Renaud v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 1452, at *24 (E.D.N.Y. Jan. 6, 2012); *Shumway,* 118 F.3d at 65.  Accordingly, Ms. Setelius' Title VII and NYHRL gender discrimination and retaliation claims must be dismissed.

**E.     *Ms. Setelius Cannot Demonstrate Pretext***

While Ms. Setelius attempts to establish pretext by asserting, in a conclusory manner, that Mr. Carlon (her former co-worker) and other male employees had underground electrical services installed at their residences but were not terminated (Compl. ¶40), the record evidence does not support this assertion.  As explained above, the Company looked into Ms. Setelius' allegations regarding Mr. Carlon.  (Dorsey Aff. ¶15).  The Company's investigation did not turn up any evidence to support Ms. Setelius' allegations.  *Id.*  Furthermore, during her deposition, Ms. Setelius admitted that she does not have any personal knowledge as to who installed an underground electrical service at Mr. Carlon's residence or as to how the arrangements for the installation of service were handled.  (Pl. Dep. 57-58).

Ms. Setelius additionally admitted during her deposition that she is not aware of any other employee who had the same type of work performed at their personal residence.  (Pl. Dep. 57).  Accordingly, Ms. Setelius failed to present any evidence demonstrating that Mr. Carlon or any other male employee engaged in the same misconduct as Ms. Setelius, but was not

disciplined.  Furthermore, the record contains no evidence (as it must) showing that even if male employees did engage in the same misconduct as Ms. Setelius, the Company knew about it.  An employee who engages in misconduct comparable to that of plaintiff, is not similarly situated to plaintiff, unless the employer is aware of the comparator employee's misconduct.  *See Dinkins v. Suffolk Transp. Serv.,* 2010 U.S. Dist. LEXIS 71242, at *29-30 (E.D.N.Y. July 15, 2010) (collecting cases).  Ms. Setelius presented no evidence from which this Court could conclude that the individuals who conducted the investigation in her case and/or who made decision to terminate her were aware of the alleged violations by Mr. Carlon or anyone else.  Under these circumstances, Ms. Setelius cannot demonstrate that her gender or any other prohibited consideration prompted the termination of her employment.

## POINT II
## SUMMARY JUDGMENT IS WARRANTED AS TO MS. SETELIUS' GENDER-BASED HOSTILE WORK ENVIRONMENT CLAIM

A.   *Ms. Setelius Does Not Allege Conduct Sufficient to Create a Gender-Based Hostile Work Environment*

To make out a gender-based hostile work environment claim, a plaintiff must show that the complained-of conduct: (1) is objectively severe or pervasive (*i.e.*, it creates an environment that a reasonable person would find hostile or abusive); (2) creates an environment that plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's gender.  *See Alfanso v. Costello*, 294 F.3d 365, 373-375 (2d Cir. 2002).  Furthermore, the harassment must be "sufficiently severe or pervasive so as 'to alter the conditions of [the plaintiff's] employment.'"  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

To defeat a motion for summary judgment, a plaintiff must show either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted, so as to have altered the conditions of the plaintiff's working environment.  *See Rios*

*v. Buffalo & Fort Erie Pub. Bridge Auth.*, 2008 U.S. Dist. LEXIS 17911, at*3 (W.D.N.Y. 2008).
In making this assessment, relevant factors include "the frequency of the discriminatory conduct;
its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;
and whether it unreasonably interferes with an employee's work performance." *Harris v.
Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). These factors must be evaluated "cumulatively"
so that the court can "obtain a realistic view of the work environment." *Schwapp v. Town of
Avon*, 118 F.3d 106, 111 (2d Cir. 1997). Finally, "it is 'axiomatic' that in order to establish a
sex-based hostile work environment claim under Title VII, a plaintiff must demonstrate that the
conduct occurred because of her sex." *Alfanso*, 294 F.3d at 374.

Ms. Setelius' hostile work environment claim is predicated upon the following
allegations: (1) Mr. Delach regularly screamed at Ms. Setelius or spoke to her in an otherwise
condescending manner; (2) in the Fall of 2010, Ms. Setelius' co-worker made several allegedly
inappropriate comments to her; and (3) in the Fall of 2010, Messrs. Delach, Luckie, and Carlon
made comments in front of Ms. Setelius about the breasts of a female co-worker . . . ." (Compl.
¶¶16, 35, 36).[6]

It is well-established that a supervisor's being rude or disrespectful to, yelling at, or
criticizing an employee will not support a hostile work environment claim in the absence of any
connection to a protected characteristic of the employee. *See Morales v. ATP Health & Beauty
Care, Inc.*, 2008 U.S. Dist. LEXIS 63540, at *9, *28-29 (D. Conn. Aug. 18, 2008) (dismissing
plaintiff's hostile work environment claim, alleging that her supervisor "would regularly sneer at
[her] and regularly yell at [her] for the smallest reasons" where plaintiff failed to produce
evidence to support an inference that supervisor's conduct was motivated by discriminatory

---

[6] Mr. Delach vehemently denies all harassing, discriminatory, and/or retaliatory conduct which Ms. Setelius attributes to him in her federal district court Complaint. (Delach Aff. ¶¶5-13).

animus."); *see also Alfanso*, 294 F.3d at 378 ("It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); *Figueroa v. City of New York*, 118 Fed. Appx. 524, 536 (2d Cir. 2004) (upholding grant of summary judgment where plaintiff failed to show required linkage between sex-neutral incidents and discriminatory animus).

The same rationale should apply in this case. Even if Mr. Delach yelled at and criticized Ms. Setelius (which Mr. Delach vehemently denies doing), ***there is no evidence that he engaged in this conduct because Ms. Setelius is a woman.*** During her deposition, Ms. Setelius was given numerous opportunities to provide specific examples of statements Mr. Delach made while allegedly screaming at her. Ms. Setelius was unable to provide any specific examples, stating only that he was "rude" and "nasty" to her. In fact, Ms. Setelius does not attribute any remarks indicative of gender bias to Mr. Delach, nor does she allege that Mr. Delach made any sexual remarks or jokes to her, commented about her looks, or subjected her to physical touching. During her deposition, Ms. Setelius also admitted that she never told Mr. Delach that she did not appreciate the way in which he was allegedly treating her. (Pl. Dep. 117). Ms. Setelius therefore cannot demonstrate that Mr. Delach's alleged yelling at her was in any way connected to her gender.

Ms. Setelius likewise cannot predicate her gender-based hostile work environment claim upon the comments she alleges were made in her presence in Fall 2010. Again, these comments, even if true, constitute nothing more than "isolated incidents" of inappropriate conduct. Both state and federal courts have consistently held that isolated incidents of harassment are not sufficient to create a hostile work environment. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998);

17

*Ballance v. Energy Transp. Corp.*, 2001 U.S. Dist. LEXIS 16763 (S.D.N.Y. Oct. 18, 2001);

*Hanna v. New York Hotel Trades Council & Hotel Assn. of NY City Health Ctr., Inc.*, 18 Misc.

3d 436, 444 (N.Y. Sup. Ct. 2007).

Evaluated in the light of recent case law, Ms. Setelius' evidence clearly falls well below

the threshold required to establish an actionable gender-based hostile work environment claim.[7]

The alleged harassing conduct about which Ms. Setelius complains here simply does not, as a

matter of law, rise to the level of creating a hostile work environment.

**B.     *National Grid is Not Liable for the Alleged Gender-Based Hostile Work Environment***

Assuming *arguendo* that Ms. Setelius has created a genuine issue of material fact as to

whether there was a hostile work environment, her claim must nevertheless be dismissed because

the Company is entitled to the *Faragher/Ellerth* affirmative defense in this case. The

*Faragher/Ellerth* affirmative defense comprises two elements: (1) "the employer exercised

reasonable care to prevent and correct promptly any harassing behavior;" and (2) "the plaintiff

employee unreasonably failed to take advantage of any preventative or corrective opportunities

provided by the employer or to avoid harm otherwise."[8] *Faragher v. City of Boca Raton*, 524

U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

---

[7] In this Circuit, hostile work environment claims have consistently been dismissed for insufficiency of evidence, even though they involved a greater number of incidents and were more severe and had more pronounced discriminatory overtones than was adduced here. *See Robinson v. Purcell Constr. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012); *Patterson v. Xerox Corp.*, 2012 U.S. Dist. LEXIS 82052, at \*13-14 (W.D.N.Y. June 13, 2012); *Mark v. Brookdale Univ. Hosp. & Med. Ctr.*, 2005 U.S. Dist. LEXIS 12584, at \*75-76 (E.D.N.Y. June 22, 2005); *Augustin v. Yale Club*, 2006 U.S. Dist. LEXIS 67462, at \*66-69 (S.D.N.Y. Sept. 15, 2006), *aff'd*, 274 Fed. Appx. 76 (2d. Cir. 2008).

[8] The employer is allowed to raise the *Faragher/Ellerth* affirmative defense as long as: (1) the employee's supervisor took "no tangible employment action," which involves an official company act against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment. It is well-established that the *Faragher/Ellerth* affirmative defense is available in circumstances where a supervisor engages in harassment, but such harassment does not culminate in a tangible employment action. *See Finnerty v. Sadlier, Inc.*, 176 Fed. Appx. 158, 160, 161(2nd Cir. 2006). The word "culminate" requires that the tangible employment action be linked to the supervisor's discriminatory harassment." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 102 (2d Cir. 2006). Where (as here) there is no causal connection between the harassing conduct and the plaintiff's termination, such termination is not tangible employment action prohibiting the employer's defense. *See*

An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antidiscrimination policy during the period of the plaintiff's employment. *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003); *Ferraro*, 440 F.3d at 102. During Ms. Setelius' term of employment, the Company had (and currently has) an anti-harassment policy in effect that prohibited sexual harassment, as well as any harassment on account of gender. (Dorsey Aff. ¶20, Ex. B). In plain language and in the strongest possible terms, the policy states that harassment is prohibited; gives numerous examples to illustrate what constitutes harassment; provides several avenues, including anonymous hotlines, by which employees can raise harassment complaints to persons including and besides harassing supervisors; and contains an anti-retaliation provision. *Id.* at ¶21. Ms. Setelius does not dispute the reasonableness of National Grid's anti-harassment policy or its complaint procedures. Accordingly, National Grid has satisfied the first element of the *Faragher/Ellerth* affirmative defense. *See Nally*, 2013 U.S. Dist. LEXIS 75722, at *62; *Cajamarca,* 863 F. Supp. 2d at 249.

National Grid has also satisfied its burden with respect to the second element of the *Faragher/Ellerth* affirmative defense, as it has established that Ms. Setelius was aware of the Company's anti-harassment policies and procedures and unreasonably failed to take advantage of them. During her deposition, Ms. Setelius admitted that she was fully aware of and trained with respect to National Grid's policies prohibiting retaliation, discrimination, and harassment of

---

*Richards v. New York City Dep't of Homeless Servs.,* 2009 U.S. Dist. LEXIS 20410, at *16 (E.D.N.Y. Mar. 15, 2009); *Clarke v. Mount Sinai Hosp.*, 2007 U.S. Dist. LEXIS 101036, at *25 (E.D.N.Y. June 28, 2007), *adopted by, judgment entered by, Clarke v. Mount Sinai Hosp.*, 2007 U.S. Dist. LEXIS 52274 (E.D.N.Y. July 13, 2007); *Cajamarca v. Regal Entertainment Group*, 863 F. Supp. 2d 237, 248-249 (E.D.N.Y. 2012); *Nally v. NYS* 2013 U.S. Dist. LEXIS 75722, at *59 (N.D.N.Y. May 30, 2013). As more fully explained above, Mr. Delach did not participate in any way in the investigation into Ms. Setelius' misconduct and played no role in the decision to terminate her employment. (Dorsey Aff. ¶18; Delach Aff. ¶¶14-15). Since it is undisputed that Mr. Delach took no tangible employment action against Ms. Setelius, the *Faragher/Ellerth* affirmative defense is available to the Company in this case.

any kind (Pl. Dep. 64-66); she knew and understood the procedures for filing internal complaints (Pl. Dep. 64-66); and she never made a complaint of any kind to the Company's HR Department. (Pl. Dep. 59-60; 64-66). Based upon the foregoing, National Grid has satisfied its burden with respect to the *Faragher/Ellerth* affirmative defense, necessitating dismissal of Ms. Setelius' hostile work environment claim with prejudice.

## POINT III
## MS. SETELIUS' COMPENSATION CLAIM LACKS LEGAL AND FACTUAL MERIT AND MUST ALSO BE DISMISSED

In her Complaint, in support of her EPA claim, Ms. Setelius alleges that she was compensated at a lower salary than her male subordinates. (Compl. ¶13). During her deposition, however, Ms. Setelius confirmed that this is an erroneous statement and that her EPA claim is limited only to three of her former male co-workers: Mr. Simone Sarcona ("Mr. Sarcona"),[9] Mr. James Luckie ("Mr. Luckie"), and Mr. Martin Lyons ("Mr. Lyons"). (Pl. Dep. 69-73). As a preliminary matter, it should be noted that none of these individuals is similarly situated to Ms. Setelius because, unlike her, they were all external hires into supervisory positions with the Company. (Baer Aff. ¶5). Ms. Setelius' EPA claim should be dismissed on these basis alone. However, as explained below, other multiple grounds exist for dismissing Plaintiff's EPA claim.

### A.    *Ms. Setelius' EPA Claim as It Relates to Mr. Sarcona is Time-Barred*

Any claim that Ms. Setelius makes with regard to an alleged pay disparity occurring more than 2-years prior to her filing the lawsuit is time-barred by the EPA's 2-year statute of limitations. 29 U.S.C. § 255(a); *Simpri v. City of New York*, 2003 U.S. Dist. LEXIS 23266, at *23 (S.D.N.Y. 2003). Since Ms. Setelius did not commence this lawsuit until November 14, 2011 (*see* ECF Docket No. 1), any allegation of disparity in pay occurring prior to November 14,

---

[9] Mr. Simon Sarcona is also known by the first name "Sam."

2009 are time-barred and must be dismissed. *Pergament v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 23732, at *54 n.16 (E.D.N.Y. 2007).

Ms. Setelius alleges that Mr. Sarcona was paid more than she was to do the work of a Field Supervisor. (Pl. Dep. 73). It is undisputed, however, that Mr. Sarcona's employment ended in November of 2006 - more than five (5) years prior to this action being commenced. (Baer Aff. ¶9). Thus, any EPA claim based on an alleged disparity in pay between Ms. Setelius and Mr. Sarcona must be dismissed. *See, e.g., Simpri*, 2003 U.S. Dist. LEXIS 23266, at *24.

**B.** **Ms. Setelius Cannot Establish a Viable EPA Claims With Respect to Mr. Lyons Because at All Relevant Times She Was Paid More Than Mr. Lyons**

It is well settled that establish to a prima facie case under the EPA, the plaintiff has the burden in demonstrating that she was *paid less* than comparably situated male employees. *See Abreu Suzuki v. State Univ. of N.Y. College*, 2013 U.S. Dist. LEXIS 83555, at *8 (E.D.N.Y. June 13, 2013). Here the record evidence shows that at all times relevant to Ms. Setelius' claim, she was compensated at a higher rate than Mr. Lyons. (Baer Aff. ¶4). Mr. Lyons was hired by the Company in June 2010 at an annual base salary of $90,000.[10] *Id.* In June 2010, Ms. Setelius was earning an annual base salary of $91,960. *Id.* These salaries were in effect at the time of Ms. Setelius' termination from employment in February 2011. *Id.* Inasmuch as the evidence shows that Ms. Setelius was actually paid more than Mr. Lyons, to the extent Ms. Setelius' EPA claim relates to Mr. Lyons, it must be dismissed.

**C.** **Ms. Setelius Cannot Demonstrate That She Was Paid Less Than Mr. Luckie Because of Her Sex**

---

[10] Unlike Ms. Setelius, at the time of hiring, Mr. Lyons held a Bachelor of Science Degree in Facilities Engineering; was employed as a Customer Project Manager/Operations Planner/Operations Supervisor for Consolidated Edison Company of New York, Inc. ("ConEd") for approximately eight years; and had one year of experience working as an engineer for the United States Navy while serving as a lieutenant on active duty in Afghanistan, as well as two years of field experience working in general mechanical and electrical repair. (Baer Aff. ¶10).

Assuming, *arguendo*, Ms. Setelius can meet her *prima facie* burden with regard to Mr. Luckie, her EPA claim as it relates to him must nonetheless be dismissed because there is no evidence that Ms. Setelius was paid less than Mr. Luckie because of her sex.[11]  Even where a plaintiff establishes a *prima facie* case, defendant will not be liable under the EPA if the pay disparity results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1); *see Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999); *Milligan v. Citibank, N.A.*, 2001 U.S. Dist. LEXIS 16105, at *27 (S.D.N.Y. 2001).  The "factor other than sex" defense requires only a "legitimate business reason for implementing the gender-neutral factor that brought about the wage differential."  *Belfi*, 191 F.3d at 136.  In assessing the employer's legitimate, gender-neutral reason, "it is not [the court's] province to second-guess employers' business judgment."  *Harker v. Utica Coll. of Syracuse Univ.*, 885 F. Supp. 378, 390 (N.D.N.Y. 1995).

Although Ms. Setelius may have been paid less than Mr. Luckie, the difference in pay had nothing to do with Ms. Setelius' gender.  Unlike Ms. Setelius, Mr. Luckie was an external hire into the supervisory position with the Company.  (Baer Aff ¶5).  With respect to external hires, when determining the starting salary, the Company considers a variety of factors, including their educational background, previous work experience, and earnings immediately prior to employment with the Company.  *Id.*

Mr. Luckie was hired by the Company in September 2005 as a Senior Supervisor at an annual base salary of $80,000, at a location different from that of Ms. Setelius.  *Id.* at ¶11.

---

[11] In fact, the record evidence shows that between September 2005 and February 2011, Mr. Luckie's salary was increased by $18,734, while Ms. Setelius' salary was increased by $30,610 between September 2004 and February 2011.  (Baer Aff. ¶¶15-16).

Specifically, Mr. Luckie was hired to work at the Ravenswood Generation Station, a power plant located in Long Island City, New York. *Id.* At the time of his hiring, Mr. Luckie held a Bachelor's Degree in Economics from Fordham University and was working towards earning an M.B.A. from Dowling College. *Id.* at ¶12. In addition, prior to being hired by the Company, Mr. Luckie was employed as an Electrical Supervisor for Reliant Energy for approximately two years; as a Director and General Manager of Operations for an electrical union for approximately four years; and as a Senior Project Manager for a power plant manufacturing company for approximately two years. *Id.* Mr. Luckie also had extensive experience working for utility companies. Specifically, Mr. Luckie had fifteen years' experience working at ConEd[12] (including time working as an Operating Supervisor, which is a first-line supervisor position). *Id.* at ¶13.

By contrast, at the time of her internal promotion to the Field Supervisor position Ms. Setelius did not have a college degree or prior relevant supervisory experience, and never actually worked in field herself. (Pl. Dep. 10-14; Baer Aff. ¶7). As explained in the accompanying affidavit of Ms. Maryjane Baer (Director of U.S. Recruiting and Inclusion and Diversity), the Company values employees with professional degrees and extensive work experience and compensates such employees at a higher level, as compared to employees without these attributes. (Baer Aff. ¶5). The value placed on education and prior relevant experience indisputably qualifies as "factor other than sex" for EPA purposes. *See Miller v. Batesville Casket Co.*, 2007 U.S. Dist. LEXIS 53068, at *38-39 (E.D.N.Y. 2007), *aff'd*, 312 Fed. Appx. 404 (2d Cir. 2009); *accord Harker,* 885 F. Supp. at 390 ("employers may prefer and

---

[12] ConEd is similar to National Grid in that it is a utility company providing energy (electric, natural gas, and steam) services to customers in the New York City area. (Baer Aff. ¶10, fn.3). Individuals who have been employed by ConEd are often good candidates for management/supervisory positions at National Grid because they do not require extensive training and can be placed into managerial/supervisory positions right away. *Id.*

reward experience, believing it makes a more valuable employee, for whatever reason"); *Kaplan v. Multimedia Entm't, Inc.*, 2005 U.S. Dist. LEXIS 40351, at *35-36 (W.D.N.Y. 2005) ("Seniority, experience, and longevity of service are gender-neutral, non-discriminatory factors that justify higher compensation."), *aff'd*, 199 Fed. Appx. 54 (2d Cir. 2006); *see also Milligan*, 2001 U.S. Dist. LEXIS 16105, at *27-28; *Dinolfo v. Rochester Tel. Corp.*, 972 F. Supp. 718, 724 (W.D.N.Y. 1997).

It is clear that Ms. Setelius bases her EPA claim on mere speculation.  When deposed, Ms. Setelius admitted that she has no knowledge regarding the facts or circumstances surrounding the hiring of the individuals she attempts to use in this case as her comparators.  (Pl. Dep. 73-75).   Accordingly, in light of the record evidence, the summary judgment for Defendants is warranted on Plaintiff's EPA claim.  *See Kanhoye v. Altana, Inc.*, 686 F. Supp. 2d 199, 213 (S.D.N.Y. 2009) (granting employer summary judgment and dismissing EPA claim because plaintiff's speculative testimony was insufficient to raise a question of fact); *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 825 (E.D.N.Y. 1999) (EPA claim dismissed where plaintiff was "not aware" of what comparators were paid and had no "hard evidence in writing to support [her] suspicions" that pay disparity was due to her sex; "Plaintiff's proof fails to satisfy the rigorous standards of an EPA claim.").

## POINT IV
## MS. SETELIUS' AIDING AND ABETTING CLAIMS AGAINST MR. DELACH MUST BE DISMISSED AS A MATTER OF LAW

In her Complaint, Ms. Setelius purports to assert several claims against Mr. Delach pursuant to N.Y. Exec. Law § 296.6 - the NYHRL's prohibition on aiding and abetting discriminatory acts. (Compl. ¶¶ 46-47).  That provision provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of

the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296.6. In this Circuit, however, it is well-established that an individual cannot be held liable under the NYHRL for aiding and abetting his own alleged discriminatory conduct. *See Nunez v. Cuomo*, 2012 U.S. Dist. LEXIS 110867, at *63 (E.D.N.Y. Aug. 7, 2012); *Virola v. XO Communs., Inc.*, 2008 U.S. Dist. LEXIS 30413, at *67 (E.D.N.Y. Apr. 15, 2008) (collecting cases). Since Ms. Setelius does not allege that any other individual besides Mr. Delach participated in the alleged discriminatory conduct, her aiding and abetting claims against Mr. Delach must be dismissed as a matter of law.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully submit that they are entitled to summary judgment pursuant to Fed.R.Civ.P. 56 at this time. Defendants accordingly request that the Court grant this motion and issue an order dismissing the Amended Complaint in its entirety, and that it grant such other and further relief as the Court may deem to be just and proper.

Dated:  August 16, 2013

BOND, SCHOENECK & KING, PLLC

By: /s/Robert A. LaBerge
      Robert A. LaBerge (RL1983)
      Jessica C. Satriano (JS0981)
Attorneys for Defendants
National Grid Electric Services LLC
and Mr. Henry Delach
1399 Franklin Avenue, Suite 200
Garden City, NY 11530-1679
Telephone:  (516) 267-6300

2186359

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, the foregoing document was served in accordance with the Individual Rules of Practice of the Hon. Margo K. Brodie upon the following parties and participants:

> Mattthew Weinick, Esq.
> Leeds Brown Law, P.C.
> One Old Country Road
> Suite 347
> Carle Place, NY  11514-1851

I further certify that on October 14, 2013, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service.

_____
Jessica C. Satriano (JS0981)
*Attorneys for the Defendants*
1399 Franklin Avenue, Suite 200
Garden City, New York  11530
(516) 267-6332; jsatriano@bsk.com

74814.1 10/14/2013